HODGSON RUSS LLP
605 Third Ave, Suite 2300
New York, New York  10158
Telephone:  (646) 218-7605
Facsimile:  (646) 218-7665
Neil B. Friedman
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

JJ IMPORTS, LLC,

              Plaintiff

v.

QINGDAO ECOPURE FILTER CO., LTD,
HONGKONG ECOAQUA CO., and
ECOLIFE TECHNOLOGIES, INC.,

              Defendants.

Hon.

Civil No.

---

## **<u>COMPLAINT</u>**

This dispute centers on two design patents that Defendants fraudulently obtained by deliberately withholding material information from the USPTO, namely, that the subject designs are directed to Samsung, Whirlpool, and/or Kenmore brand replacement water filters. Even though Defendants' design patents were fraudulently obtained, and Plaintiff had been selling its replacement water filters for years before Defendants even filed the subject patent applications, Defendants have successfully diverted customers to their products by making baseless allegations of infringement against Plaintiff.  These actions are consistent with the Defendants' long history of intellectual property abuses, including attempted trademark hijacking of Samsung, Whirlpool, and Kenmore brand water filter model numbers/model designations and, upon information and belief, hijacking Plaintiff's own trademark in Canada.

Accordingly, JJ Imports, LLC ("JJ Imports" or "Plaintiff") brings this action against Qingdao Ecopure Filter Co., Ltd., HongKong Ecoaqua Co., and Ecolife Technologies, Inc. (collectively, "Defendants") to seek relief from Defendants' bad-faith use of United States patent law to suppress competition.

## The Parties

1.      JJ Imports is a New Jersey limited liability company with a principal place of business at 319 E 54 Street, Elmwood Park, New Jersey 07407.  Plaintiff imports and sells products, including replacement water filters for certain models of refrigerators, including for Samsung, Whirlpool, and Kenmore brand refrigerators, throughout the United States.  JJ Imports has been selling its "PURELINE" and "Clear Drop" water filters since 2015.

2.      Upon information and belief, Qingdao Ecopure Filter Co., Ltd. ("Ecopure") has its principal place of business and headquarters at No. 13, Yishengbai Road, Environmental Protection Industrial Zone, Jimo, Quingdao, China.  Ecopure has obtained a number of patents related to refrigerator replacement water filters, including replacement water filters for Samsung, Whirlpool, and Kenmore brand refrigerators.  Upon information and belief, Ecopure manufactures, distributes, exports, and sells refrigerator water filters, including replacement water filters for Samsung, Whirlpool, and Kenmore brand refrigerators.

3.      Upon information and belief, HongKong Ecoaqua Co., Limited ("Ecoaqua") has its principal place of business and headquarters at Hong Kong Rm 2105 JQD2732 Trend Centre, 29-31 Cheng Lee St. Wan Chai, Hong Kong, China.  Upon information and belief, Ecoaqua exports, imports, and sells refrigerator replacement water filters, including replacement water filters for Samsung, Whirlpool, and Kenmore brand refrigerators, in the

United States under the brand names "AquaCrest," "Waterdrop," "MaxBlue," "Filter Logic,"

"Water Specialist," and "EcoAqua."

4.     Upon information and belief, Ecolife Technologies, Inc. ("Ecolife Inc.") is a California corporation with a principal place of business at 17910 Ajax Circle, City of Industry, California 91748.  Upon information and belief, Ecolife Inc. is an Ecoaqua distributor for the import and sale of Ecoaqua's refrigerator replacement water filters in the United States, including replacement water filters for Samsung, Whirlpool, and Kenmore brand refrigerators.

5.     Defendants' AquaCrest and Waterdrop products compete directly with Plaintiff's PURELINE and Clear Drop products.

6.     Upon information and belief, Defendants and/or their attorney, Mr. Joe McKinney Muncy, committed fraud on the patent office in filing U.S. patent applications for Samsung, Whirlpool, and Kenmore brand replacement water filters.

7.     Upon information and belief, Defendants and/or their attorney, Mr. Joe McKinney Muncy, committed fraud in filing U.S. trademark applications for Samsung, Whirlpool, and/or Kenmore brand replacement water filter model numbers/model designations.

8.     Upon information and belief, Defendants have brought baseless claims of infringement against the Plaintiff based upon intellectual property rights that they knew or should have known were fraudulently obtained.

9.     As a result of Defendants' baseless claims of infringement, Plaintiff's products have been removed from online marketplaces, resulting in a loss of customers and sales, dilution of goodwill, and injury to Plaintiff's reputation, among other things.

**Jurisdiction and Venue**

10.     This is an action seeking a declaratory judgment that Ecopure's patents are invalid and not infringed by Plaintiff.  Plaintiff's claims arise under the patent laws of the United States, 35 U.S.C. Section 101, *et seq.* and the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202.

11.     This action further seeks to remedy the harm caused by Defendants' actions in unfairly competing with Plaintiff in violation of the common law, the Lanham Act, 15 U.S.C. Section 1125, and the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 *et seq.*, through bad-faith enforcement of patents they know to be invalid and making false accusations of infringement by Plaintiff that resulted in a loss of customers and sales, dilution of goodwill, and injury to Plaintiff's reputation, among other things.

12.     This Court has subject matter jurisdiction under 28 U.S.C. Sections 1331, 1338(a), and 2201(a).

13.     This Court has personal jurisdiction over Ecopure and Ecoaqua under Federal Rules of Civil Procedure, including Rule 4(k)(2) which contemplates a foreign entity's contacts with the entire United States.  For example, Ecopure applied for and obtained U.S. patents that form the basis of this lawsuit.  Ecopure and Ecoaqua also market and sell replacement water filtration products to customers located in the United States, including in New Jersey.

14.     This Court has personal jurisdiction over Ecolife Inc. because Ecolife Inc. markets and sells competing water filtration products to customers located in the United States, including in New Jersey.

15.     Additional allegations supporting the exercise of personal jurisdiction over Defendants are set forth below.

16.     Venue is proper under 28 U.S.C. Section 1391(b)(2) or, alternatively, 1391(b)(3).

## Background and Facts

### Plaintiff's Water Filtration Products

17.     Plaintiff sells PURELINE and Clear Drop water filtration products for refrigerators, among other things.  Once installed, Plaintiff's replacement filters remove pesticides, herbicides, lead, mercury, and chromium from the water that passes through them, making water cleaner and safer to drink.

18.     Plaintiff's PURELINE and Clear Drop products have received certifications from the Water Quality Association, the National Science Foundation, and the International Association of Plumbing and Mechanical Officials.

19.     Plaintiff's replacement water filters come in several models and are compatible with many major refrigerator brands.

20.     Plaintiff's PL-200 model is a replacement water filter compatible with Samsung's Model DA29-00020A and DA29-00020B filters.

21.     Plaintiff's PL-600 model is a replacement water filter compatible with Whirlpool's model number 4396508, EDR5RXD1, W10186668, NLC240V, and WF285 filters and with Kenmore's model number 46-9010 and 46-9902 filters.

- 5 -

22.     The PL-600 model design has not changed since 2012.

23.     Plaintiff's CD-200 model is compatible with Samsung's model number DA29-00020B filters.

24.     The PL-200, PL-600, and CD-200 models are available for sale in packages of one, two, three, or six filters.

25.     Plaintiff sells its PL-200 and PL-600 water filtration products, among others, on a dedicated website: https://PURELINEfilters.com/.

26.     Since 2015, Plaintiff also has sold its PL-200 and PL-600 water filtration products on Amazon.

27.     Plaintiff has sold its CD-200 water filer products on Amazon since December 2018.

28.     Amazon is the largest online retailer in the world.

29.     Plaintiff sells the vast majority of its PL-200, PL-600, and CD-200 products through Amazon.

**<u>Defendants' Patents and Trademark Filings</u>**

30.     On October 23, 2018, the United States Patent and Trademark Office (the "USPTO") issued U.S. Patent No. US D831,786 S (the "D'786 Patent"), entitled "FILTER UNIT."  A copy of the D'786 Patent is attached as **Exhibit A**.

31.     The D'786 Patent lists Zhibin Zou as the inventor and Ecopure as the assignee.

32.     The D'786 Patent is directed to replacement water filters for Whirlpool's model number 4396508, EDR5RXD1, W10186668, NLC240V, and WF285 and Kenmore's model number 46-9010 and 46-9902.

33.     On April 9, 2019, the USPTO issued U.S. Patent No. US D845,434 S (the "D'434 Patent"), entitled "FILTER UNIT."  A copy of the D'434 Patent is attached as **Exhibit B**.

34.     The D'434 Patent lists Zhibin Zou as the inventor and Ecopure as the assignee.

35.     The D'434 Patent is directed to replacement water filters for Whirlpool's model number 4396508, EDR5RXD1, W10186668, NLC240V and WF285 and Kenmore's model number 46-9010 and 46-9902.

36.     Ecolife filed U.S. trademark application Serial Nos. 87684066, 87684059, 87684056, 87684051 and 87684048 for the marks DA29-00020B, DA29-00020, DA29-00003B, DA29-00003G, and DA29, respectively, for air filtering installations and water filters.  At the time Ecolife filed such applications, Ecolife declared, after being warned that willful false statements and the like are punishable by fine or imprisonment, ". . . that the applicant is the owner of the trademark/service mark sought to be registered"; "that the applicant is entitled to use the mark in commerce;" and that "to the best of its knowledge and belief . . . no other persons have the right to use the mark in commerce, either in the identical form or in such near

resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

37.     Upon information and belief, Defendants filed or caused to be filed a Canadian trademark application for DA29-00003G.

38.     DA29-00020B, DA29-00020, DA29-00003B, DA29-00003G, and DA29 are model numbers/model designations for Samsung water filters.

39.     Ecolife filed U.S. trademark application Serial Nos. 87677872 and 87677869 for the marks 4396508 and 4396510, respectively, for air filtering installations and water filters.  At the time Ecolife filed such applications, Ecolife declared under after being warned that willful false statements and the like are punishable by fine or imprisonment, . . . that the applicant is the owner of the trademark/service mark sought to be registered; that the applicant is entitled to use the mark in commerce; and that to the best of its knowledge and belief . . . no other persons have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

40.     4396508 and 4396510 are model numbers/model designations for Whirlpool/Kenmore brand water filters.

41.     Upon information and belief, Defendants filed or caused to be filed a Canadian trademark application for PURE LINE on March 5, 2019.

42.     Plaintiff has been selling its PURELINE products since 2014, and in Canada since February 2017.

**Allegations of Patent Infringement**

43.     Amazon Prime Day is Amazon's largest, global shopping event exclusive to Amazon Prime subscribers.  The two-day event offers significant discounts to subscribers, similar to Black Friday or Cyber Monday.  Sellers, like Plaintiff, stand to make a high volume of sales during this event.

44.     On July 14, 2019, only one day before Amazon Prime Day, Plaintiff learned that Defendants accused Plaintiff of patent infringement in intellectual property complaints to Amazon.

45.     Specifically, Defendants made at least seven complaints to Amazon alleging that Plaintiff's PL-200 and CD-200 filters infringed on the D'786 patent and that Plaintiff's PL-600 filters infringed on the D'434 Patent.

46.     As a result of Defendants' complaints, Plaintiff  received notices from Amazon that Amazon removed product listings for Plaintiff's PL-200, PL-600, and CD-200 filters because "a rights owner . . . believes that the [products] . . . infringe their patent . . . ."

47.     As a result of at least seven complaints by Defendants to Amazon between July 11 and July 25, 2019, Amazon customers have been unable to view or purchase Plaintiff's PL-200, PL-600, and CD-200 filters.

48.     Upon information and belief, Defendants' complaints to Amazon were the latest in Defendants' pattern or practice of filing baseless intellectual property complaints against Plaintiff and other competitors.

49.     Before the takedowns, Plaintiff enjoyed sales in excess of approximately $10,000.00 per day of PL-200 filters, in excess of $400.00 per day of PL-600 filters, and of approximately $1,000.00 per day of CD-200 filters on Amazon.

50.     Before Amazon took down Plaintiff's sales listings for PL-200 filters as a result of Defendants' complaints, Plaintiff held the "Best Seller" designation on Amazon for those filters.  Plaintiff's average customer rating for those products was 4.6 out of 5 stars.

51.     In addition to the immediate stop to all PL-200, PL-600, and CD-200 sales, the takedowns caused irreparable damage to the market presence, reputation, and goodwill associated with the PL-200, PL-600, and CD-200.

52.     Upon information and belief, Amazon uses an algorithm to determine product hierarchy—or the order in which products appear after an Amazon customer inputs search terms—and which sellers receive the coveted "Best Seller" designation.

53.     One factor upon which the algorithm depends is sales-related: sales history, quantity of sales, and sales velocity.  As sales history grows and quantity and velocity of sales for a product increase, the likelihood of that product gaining a higher spot in Amazon's product hierarchy also increases.

54.     Another factor that affects Amazon's product hierarchy is customer reviews and ratings.  The greater the number of positive customer ratings or reviews a product receives, the higher that product is likely to appear on Amazon's product hierarchy.

55.     Since Amazon took down listings for Plaintiff's PL-200, PL-600, and CD-200 filters, Plaintiff has not sold any of those water filtration products on Amazon.

56.     Each day that Plaintiff's PL-200, PL-600, and CD-200 filters are unavailable on Amazon as a result of Defendants' complaints, Plaintiff's customers are diverted to Defendants—including Plaintiff's recurring customers who return to Plaintiff for new replacement water filters every six months.

57.     Each day that Plaintiff's PL-200, PL-600, and CD-200 filters do not appear on Amazon, Plaintiff loses the opportunity to increase the products' sales history, quantity, and velocity, and also loses the opportunity to receive customer ratings and reviews based on sales of those products.

58.     Plaintiff cannot regain these lost opportunities—all of which damage the PL-200, PL-600, and CD-200's market presence, reputation, and goodwill on Amazon.  The only way to stop this harm is to immediately reinstate the PL-200, PL-600, and CD-200 product listings.

59.     In addition, the takedown notices from Amazon inform Plaintiff that, if Amazon "receive[s] more complaints about [Plaintiff's] listing, [Amazon] may not allow [Plaintiff] to sell on Amazon."

**Existence of a Justiciable Controversy**

60.     There is an actual justiciable controversy between the parties concerning the validity, enforceability, and/or scope of the D'786 and D'434 patents, and Plaintiff's alleged infringement of those patents, as made clear by the multiple complaints Defendants have submitted to Amazon.

**First Claim for Relief**
**(Declaratory Judgment of Non-Infringement of the D'786 Patent)**

61.     Plaintiff repeats the allegations set forth in paragraphs 1 through 60.

62.     Defendants have charged Plaintiff with infringement of the D'786 Patent.

63.     Plaintiff has not infringed any valid claim of the D'786 Patent.

64.     Unless Plaintiff is found to have not infringed the D'786 Patent, Defendants will continue to harass Plaintiff in the sale of Plaintiff's water filtration products.

65.     As a result of Defendants' baseless infringement accusations, Plaintiff has sustained damages in an amount to be proven at trial.

66.     Defendants' baseless infringement accusations have caused, and will continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law, including, without limitation, damage to the hierarchy assigned to Plaintiff's water filtration products on Amazon and to Plaintiff's ratings as a seller of water filtration products on Amazon, as well as a resulting loss of customers.

67.     Defendants' baseless infringement allegations also raise an imminent risk, as noted in takedown notices Plaintiff received from Amazon, that Plaintiff will be precluded from selling any products on Amazon.

**Second Claim for Relief**
**(Declaratory Judgment of Invalidity of the D'786 Patent)**

68.     Plaintiff repeats the allegations set forth in paragraphs 1 through 67.

69.     Defendants have charged Plaintiff with infringement of the D'786 Patent.

- 12 -

70.     The D'786 Patent is invalid under 35 U.S.C. Sections 102, 103, and/or 112.

71.     Pursuant to 28 U.S.C. Sections 2201-2202, Plaintiff is entitled to judgment declaring that the D'786 Patent is void, invalid, and/or unenforceable.

72.     As a result of Defendants' baseless infringement accusations, Plaintiff has sustained damages in an amount to be proven at trial.

73.     Defendants' baseless infringement accusations have caused, and will continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law, including, without limitation, damage to the hierarchy assigned to Plaintiff's water filtration products on Amazon and to Plaintiff's ratings as a seller of water filtration products on Amazon, as well as a resulting loss of customers.

74.     Defendants' baseless infringement allegations also raise an imminent risk, as noted in takedown notices Plaintiff received from Amazon, that Plaintiff will be precluded from selling any products on Amazon.

**Third Claim for Relief**
**(Declaratory Judgment of Non-Infringement of the D'434 Patent )**

75.     Plaintiff repeats the allegations set forth in paragraphs 1 through 74.

76.     Defendants have charged Plaintiff with infringement of the D'434 Patent.

77.     Plaintiff has not infringed any valid claim of the D'434 Patent.

78.     Unless Plaintiff is found to have not infringed the D'434 Patent, Defendants will continue to harass Plaintiff in the sale of Plaintiff's water filtration products.

79.     As a result of Defendants' baseless infringement accusations, Plaintiff has sustained damages in an amount to be proven at trial.

80.     Defendants' baseless infringement accusations have caused, and will continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law, including, without limitation, damage to the hierarchy assigned to Plaintiff's water filtration products on Amazon and to Plaintiff's ratings as a seller of water filtration products on Amazon, as well as a resulting loss of customers.

81.     Defendants' baseless infringement allegations also raise an imminent risk, as noted in takedown notices Plaintiff received from Amazon, that Plaintiff will be precluded from selling any products on Amazon.

**Fourth Claim for Relief**
**(Declaratory Judgment of Invalidity of the D'434 Patent )**

82.     Plaintiff repeats the allegations set forth in paragraphs 1 through 81.

83.     Defendants have charged Plaintiff with infringement of the D'434 Patent.

84.     The D'434 Patent is invalid under 35 U.S.C. Sections 102, 103, and/or 112.

85.     Pursuant to 28 U.S.C. Sections 2201-2202, Plaintiff is entitled to judgment declaring that the D'434 Patent is void, invalid, and/or unenforceable.

86.     As a result of Defendants' baseless infringement accusations, Plaintiff has sustained damages in an amount to be proven at trial.

87.     Defendants' baseless infringement accusations have caused, and will continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law, including, without limitation, damage to the hierarchy assigned to Plaintiff's water filtration products on Amazon and to Plaintiff's ratings as a seller of water filtration products on Amazon, as well as a resulting loss of customers.

88.     Defendants' baseless infringement allegations also raise an imminent risk, as noted in takedown notices Plaintiff received from Amazon, that Plaintiff will be precluded from selling any products on Amazon.

**Fifth Claim for Relief**
**(Declaratory Judgment of Unenforceability of**
**the D'786 Patent Due to Inequitable Conduct)**

89.     Plaintiff repeats the allegations set forth in paragraphs 1 through 88.

90.     Mr. Joe McKinney Muncy, who prosecuted the D'786 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose Samsung model numbers DA29-00020A and DA29-00020B water filters (the "Samsung Prior Art") to the USPTO during prosecution of the D'786 Patent. The Samsung Prior Art was described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the D'786 Patent.

91.     Mr. Muncy filed trademark applications for AQUACREST, ECO AQU, and AQUADROP on behalf of Ecoaqua with the USPTO.

92.     Mr. Muncy filed trademark applications for DA29-00020B, DA29-00020, DA29-00003B, DA29-00003G, DA29, and ECOLIFE on behalf of Ecolife with the USPTO.

93.     DA29-00020B, DA29-00020, DA29-00003B, DA29-00003G, and DA29 are model numbers/model designations for Samsung water filters.

94.     Mr. Muncy had personal knowledge of the Samsung Prior Art during the pendency of the D'786 Patent at least from the specimen of use he filed on April 24, 2018 in the AQUACREST trademark application.  The specimen is a screenshot of an Amazon listing for an AquaCrest replacement water filter, which states that the product is a "Water Filter Replacement [f]or Samsung DA29-00020B, DA29-00020A, DA2900020A."  The listing depicts the claimed design of the D'786 Patent.  A copy of the specimen is attached as **Exhibit C**.

95.     Mr. Muncy had personal knowledge of the Samsung Prior Art during the pendency of the D'786 Patent at least from the specimen of use he filed on April 23, 2018 in the ECOAQU trademark application.  The specimen is a picture of an ECOAQU replacement filter, which identifies itself as a replacement filter for Samsung DA29-00020B filters.  The picture depicts the claimed design of the D'786 Patent.  A copy of the specimen is attached as **Exhibit D**.

96.     Mr. Muncy had personal knowledge of the Samsung Prior Art during the pendency of the D'786 Patent at least from the specimen of use he filed on May 4, 2018 in the AQUADROP trademark application.  The specimen is a picture of an AQUADROP replacement filter, which identifies itself as a replacement filter for Samsung DA29-00020B filters.  The picture depicts the claimed design of the D'786 Patent.  A copy of the specimen is attached as **Exhibit E**.

97.     Upon information and belief, Mr. Muncy had personal knowledge of the Samsung Prior Art during the pendency of the D'786 Patent at least from the website

www.water-filter.com, which depicted Defendants' Waterdrop filter adjacent the Samsung Prior Art.  A screenshot of the website was submitted as part of a specimen of use by Mr. Muncy in the ECOLIFE trademark application.  The Waterdrop filter depicted in the screenshot embodies the claimed design of the D'786 Patent.  A copy of the specimen is attached as **Exhibit F**.

98.     Upon information and belief, Mr. Muncy's personal knowledge of the Samsung Prior Art during the pendency of the D'786 Patent led to his filing of express abandonments of the DA29-00020B, DA29-00020, DA29-00003B, DA29-00003G, and DA29 trademark applications after each application had been determined to be entitled to registration by the USPTO.

99.     The Samsung Prior Art teaches and/or suggests the claimed design of the D'786 Patent, so the Samsung Prior Art was material to the patentability of the D'786 Patent.

100.    Upon information and belief, Mr. Muncy withheld the Samsung Prior Art from the USPTO with the specific intent to deceive the USPTO.

101.    But for the failure to disclose the Samsung Prior Art, the USPTO would not have allowed the D'786 Patent.

102.    Second, Mr. Zhibin Zou, the inventor of the D'786 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose to the USPTO the Samsung Prior Art during prosecution of the D'786 Patent.

103.    Upon information and belief, Mr. Zou was aware of the Samsung Prior Art as the inventor of a replacement water filter for the Samsung Prior Art.  Mr. Zou had personal

knowledge of the Samsung Prior Art, and the overlap in subject matter between the Samsung Prior Art and D'786 Patent, during the pendency of the D'786 Patent.

104.    Upon information and belief, Mr. Zou withheld the Samsung Prior Art from the USPTO with the specific intent to deceive the USPTO.

105.    But for the failure to disclose the Samsung Prior Art, the USPTO would not have allowed the D'786 Patent.

106.    Third, Mr. Zhibin Zou, the inventor of the D'786 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose to the USPTO Chinese Design Registration No. 302416364 (the "'364 Design Registration"), Chinese Utility Model No. 203620382U (the "'382 Utility Model"), and products embodied by the '364 Design Registration and '382 Utility Model (collectively, the "D'786 Chinese Prior Art") during prosecution of the D'786 Patent.  A copy of the '364 Design Registration is attached as **Exhibit G**, and a copy of the '382 Utility Model is attached as **Exhibit H**.

107.    The D'786 Chinese Prior Art is owned, manufactured, and/or sold by Tianjin Yunda Industry And Trade Co., Ltd. ("Yunda").  Yunda manufactures Plaintiff's PL-200 and PL-600 filters, which compete directly with the filters manufactured, imported, and/or sold by Defendants.

108.    Upon information and belief, Mr. Zou was aware of the D'786 Chinese Prior Art because Best Pure is a direct competitor of Mr. Zou's employer, Ecopure.  Mr. Zou had

personal knowledge of the D'786 Chinese Prior Art, and the overlap in subject matter between the D'786 Chinese Prior Art and D'786 Patent, during the pendency of the D'786 Patent.

109. Upon information and belief, Mr. Zou withheld the D'786 Chinese Prior Art from the USPTO with the specific intent to deceive the USPTO.

110. But for the failure to disclose the D'786 Chinese Prior Art, the USPTO would not have allowed the D'786 Patent.

**Sixth Claim for Relief**
**(Declaratory Judgment of Unenforceability of**
**the D'434 Patent Due to Inequitable Conduct)**

111. Plaintiff repeats the allegations set forth in paragraphs 1 through 110.

112. Mr. Joe McKinney Muncy, who prosecuted the D'434 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose Whirlpool/Kenmore model numbers 4396508 and 4396510 water filters (the "Whirlpool Prior Art") to the USPTO during prosecution of the D'434 Patent. The Whirlpool Prior Art was described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the D'434 Patent.

113. Mr. Muncy filed trademark applications for 4396508 and 4396510 on behalf of Ecolife with the USPTO.

114. 4396508 and 4396510 are model numbers/model designations for Whirlpool/Kenmore water filters.

115. Upon information and belief, Mr. Muncy had personal knowledge of the Whirlpool Prior Art during the pendency of the D'434 Patent that led to his filing of express

abandonments of the 4396508 and 4396510 trademark applications after each application had been determined to be entitled to registration by the USPTO.

116.     The Whirlpool Prior Art teaches and/or suggests the claimed design of the D'434 Patent, so the Whirlpool Prior Art was material to the patentability of the D'434 Patent.

117.     Upon information and belief, Mr. Muncy withheld the Whirlpool Prior Art from the USPTO with the specific intent to deceive the USPTO.

118.     But for the failure to disclose the Whirlpool Prior Art, the USPTO would not have allowed the D'434 Patent.

119.     Second, Mr. Zhibin Zou, the inventor of the D'434 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose the Whirlpool Prior Art to the USPTO during prosecution of the D'434 Patent.

120.     Upon information and belief, Mr. Zou was aware of the Whirlpool Prior Art as the inventor of a replacement water filter for the Whirlpool Prior Art.  Mr. Zou had personal knowledge of the Whirlpool Prior Art, and the overlap in subject matter between the Whirlpool Prior Art and D'434 Patent, during the pendency of the D'786 Patent.

121.     Upon information and belief, Mr. Zou withheld the Whirlpool Prior Art from the USPTO with the specific intent to deceive the USPTO.

122.     But for the failure to disclose the Whirlpool Prior Art, the USPTO would not have allowed the D'434 Patent.

123.    Third, Mr. Zhibin Zou, the inventor of the D'434 Patent, failed to comply with his absolute duty of candor and good faith under 37 C.F.R. § 1.56 by his knowing and deliberate failure to disclose to the USPTO Chinese Design Registration No. 302362774 (the "'774 Design Registration"), Chinese Utility Model No. 203612985U (the "'985 Utility Model"), and products embodied by the '774 Design Registration and '985 Utility Model (collectively, the "D'434 Chinese Prior Art") during prosecution of the D'434 Patent.  A copy of the '774 Design Registration is attached as **Exhibit I**, and a copy of the '985 Utility Model is attached as **Exhibit J**.

124.    The D'434 Chinese Prior Art is owned, manufactured, and/or sold by Yunda.  Yunda manufactures Plaintiff's PL-200 and PL-600 filters, which compete directly with the filters manufactured, imported, and/or sold by Defendants.

125.    Upon information and belief, Mr. Zou was aware of the D'434 Chinese Prior Art because Best Pure is a direct competitor of Mr. Zou's employer, Ecopure.  Mr. Zou had personal knowledge of the D'434 Chinese Prior Art, and the overlap in subject matter between the D'434 Chinese Prior Art and D'786 Patent, during the pendency of the D'434 Patent.

126.    Upon information and belief, Mr. Zou withheld the D'434 Chinese Prior Art from the USPTO with the specific intent to deceive the USPTO.

127.    But for the failure to disclose the D'434 Chinese Prior Art, the USPTO would not have allowed the D'434 Patent.

**Seventh Claim for Relief**
**(Unfair Competition from Bad-Faith Enforcement of Patent Rights)**

128.    Plaintiff repeats the allegations set forth in paragraphs 1 through 127.

129.    Defendants have made statements to, without limitation, Amazon that Plaintiff's PL-200 and CD-200 products infringe the D'786 Patent.

130.    Defendants had actual or constructive knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'786 patent.

131.    Defendants made these statements to Amazon about Plaintiff's PL-200 and CD-200 products in bad faith because Defendants had actual knowledge that prior art invalidates the claimed design of the D'786 Patent and/or that Plaintiff's products do not infringe the D'786 Patent.  Defendants made these statements with the intent to injure Plaintiff's business.

132.    With full knowledge of the invalidating prior art and/or that Plaintiff's products do not infringe the D'786 Patent, Defendants have asserted the D'786 Patent against Plaintiff in a bad-faith attempt to exclude competitive products, including, without limitation, the PL-200 and CD-200, that Defendants are not legally entitled to exclude.

133.    As a result of Defendants' statements to Amazon that Plaintiff's PL-200 and CD-200 products infringe the D'786 Patent, Amazon has taken down listings for Plaintiff's PL-200 and CD-200 water filtration products, resulting in diversion of Plaintiff's customers to Defendants and other competitors.

134.    Defendants have made statements to, without limitation, Amazon, that Plaintiff's PL-600 products infringe the D'434 Patent.

135.    Defendants had actual or constructive knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'434 patent.

- 22 -

136.    Defendants made these statements to Amazon about Plaintiff's PL-600 products in bad faith because Defendants had actual knowledge that prior art invalidates the D'434 Patent and/or that Plaintiff's products do not infringe the D'434 Patent.  Defendants made these statements with the intent to injure Plaintiff's business.

137.    With full knowledge of the invalidating prior art and/or that Plaintiff's products do not infringe the D'434 Patent, Defendants have asserted the D'434 Patent against Plaintiff in a bad-faith attempt to exclude competitive products, including, without limitation, the PL-600, that Defendants are not legally entitled to exclude.

138.    As a result of Defendants' statements to Amazon that Plaintiff's PL-600 products infringe the D'434 Patent, Amazon has taken down listings for Plaintiff's PL-600 water filtration products, resulting in diversion of Plaintiff's customers to Defendants and other competitors.

139.    Defendants' actions alleged here constitute acts of unfair competition designed to affect United States commerce, including commerce in New Jersey, in violation of Section 43 of the Lanham Act, 15 U.S.C. Section 1125.

140.    Defendants' actions alleged here have injured Plaintiff in the marketplace, including, without limitation, damage to Plaintiff's goodwill, loss of customers, and lost sales of Plaintiff's PL-200, CD-200, and PL-600 products.

**Eighth Claim for Relief**
**(New Jersey Fair Trade Act)**

141.    Plaintiff repeats the allegations set forth in paragraphs 1 through 140.

142.     Defendants have made statements to, without limitation, Amazon that Plaintiff's PL-200 and CD-200 products infringe the D'786 Patent.

143.     Defendants had actual or constructive knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'786 patent.

144.     Defendants made these statements to Amazon about Plaintiff's PL-200 and CD-200 products in bad faith because Defendants had actual knowledge of the Samsung Prior Art that invalidates the D'786 Patent.  Defendants made these statements with the intent to injure Plaintiff's business.

145.     With full knowledge of the invalidating prior art and/or that Plaintiff's products do not infringe the D'786 Patent, Defendants have asserted the D'786 Patent against Plaintiff in a bad-faith attempt to exclude competitive products, including, without limitation, the PL-200 and CD-200, that Defendants are not legally entitled to exclude.

146.     As a result of Defendants' statements to Amazon that Plaintiff's PL-200 and CD-200 products infringe the D'786 Patent, Amazon has taken down listings for Plaintiff's PL-200 and CD-200 water filtration products, resulting in diversion of Plaintiff's customers to Defendants and other competitors.

147.     Defendants have made statements to, without limitation, Amazon, that Plaintiff's PL-600 products infringe the D'434 Patent.

148.     Defendants had actual or constructive knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'434 patent.

149.    Defendants made these statements to Amazon about Plaintiff's PL-600 products in bad faith because Defendants had actual knowledge that the prior art invalidates the D'434 Patent and/or that Plaintiff's products do not infringe the D'434 Patent.  Defendants made these statements with the intent to injure Plaintiff's business.

150.    With full knowledge of the invalidating prior art and/or that Plaintiff's products do not infringe the D'434 Patent, Defendants have asserted the D'434 Patent against Plaintiff in a bad-faith attempt to exclude competitive products, including, without limitation, the PL-600, that Defendants are not legally entitled to exclude.

151.    As a result of Defendants' statements to Amazon that Plaintiff's PL-600 products infringe the D'434 Patent, Amazon has taken down listings for Plaintiff's PL-600 water filtration products, resulting in diversion of Plaintiff's customers to Defendants and other competitors.

152.    Defendants' actions constitute a willful and knowing act of unfair competition and unfair trade practice and interference with Plaintiff's rights, in violation of the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 *et seq*.

**Ninth Claim for Relief**
**(Common Law Unfair Competition)**

153.    Plaintiff repeats the allegations set forth in paragraphs 1 through 152.

154.    Upon information and belief, Defendants' conduct is specially designed to capitalize on the goodwill of Plaintiff and has injured, and threatens to injure, Plaintiff by, among other things, loss of customers, dilution of goodwill, and injury to Plaintiff's reputation.

155.    Defendants have unfairly competed, and continue to unfairly compete, with Plaintiff in violation of Plaintiff's common-law rights.

156.    Upon information and belief, Defendants' conduct was and is willful and intentional.

157.    Specifically, as described above, Mr. Muncy and/or Mr. Zou knowingly withheld the Samsung Prior Art from the USPTO when applying for the D'786 Patent.

158.    Also as described above, Mr. Muncy and/or Mr. Zou knowingly withheld the Whirlpool Prior Art from the USPTO when applying for the D'434 Patent.

159.    Notwithstanding Mr. Muncy and/or Mr. Zou's knowledge that the D'786 and D'434 patents were procured as a result of inequitable conduct, and therefore are invalid, Defendants have enforced, and continue to enforce, their purported D'786 and D'434 patent rights against Plaintiff.

160.    Defendants had actual or constructive knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'786 and/or D'434 patents.

161.    Notwithstanding Defendants' knowledge that Plaintiff's products have been on sale prior to the earliest effective filing date of the D'786 and/or D'434 patents, Defendants have enforced, and continue to enforce, their purported D'786 and D'434 patent rights against Plaintiff.

162.    Defendants' acts have damaged Plaintiff, and unless restrained, Defendants will continue to cause irreparable damage to Plaintiff, including damage to Plaintiff's

reputation and goodwill, in an amount that cannot now be determined.  Plaintiff has no adequate remedy at law.

## Jury Demand

163.    Plaintiff demands trial by jury on all matters triable by jury.

**WHEREFORE**, Plaintiff is entitled to judgment for the following relief:

(1)     a declaration that Plaintiff has not infringed the D'786 Patent;

(2)     a declaration that Plaintiff has not infringed the D'434 Patent;

(3)     a declaration that the D'786 Patent is void, invalid, and/or unenforceable;

(4)     a declaration that the D'434 Patent is void, invalid, and/or unenforceable;

(5)     an injunction precluding Defendants, their officers, directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in concert with them, from asserting the D'786 Patent and the D'434 Patent against Plaintiff;

(6)     a finding that this is an exceptional case under 35 U.S.C. Section 285 and awarding Plaintiff its costs and expenses, including attorneys' fees, incurred in pursuing this lawsuit;

(7)     compensatory, exemplary, and punitive damages, with interest; and

(8)     such further relief as this Court deems proper.

Dated:  August 1, 2019

**HODGSON RUSS LLP**
*Attorneys for Plaintiff*


By:  s/Neil B. Friedman
     Neil B. Friedman
605 Third Avenue, Suite 2300
New York, New York  10158
Telephone:  (646) 218-7605
Facsimile:  (646) 218-7665
nfriedma@hodgsonruss.com

## **RULE 11.2 CERTIFICATION**

        I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to plaintiffs that should be joined to this action.  In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated:  August 1, 2019

s/Neil B. Friedman<br>
Neil B. Friedman

## **RULE 201.1 CERTIFICATION**

        I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the plaintiffs seek, *inter alia*, injunctive relief.

Dated:  August 1, 2019

s/Neil B. Friedman<br>
Neil B. Friedman

090473.00000 Business 18679667v4